**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JEVON LEWIS,                              :
                                          :        Civil Action No.        13-1453 (JEI)
               Petitioner,       :
                                          :
             v.               :        **OPINION**
                                          :
UNITED STATES OF AMERICA,                 :
                                          :
              Respondent.       :
                                          :

**IRENAS**, Senior District Judge:

      Presently before the Court is the motion of Jevon Lewis ("Petitioner") to vacate, set aside, or correct his May 15, 2009, conviction, brought pursuant to 28 U.S.C. § 2255.  (ECF No. 1). This Court issued a *Miller* notice on June 14, 2013, to which Petitioner never responded.  (ECF No. 2).  Respondent, United States of America ("Respondent" or "the Government"), thereafter filed an Answer on April 11, 2014 (ECF No. 7), to which Petitioner has responded on May 16, 2014.  (ECF No. 10).  Also before this Court are Petitioner's motion to amend his § 2255 motion, initially filed after this matter was already fully briefed on August 6, 2014, and Petitioner's motion for an extension of time in which to amend (ECF No. 11, 13), to which the Government has responded.  (ECF No. 12). For the following reasons, the Court denies Petitioner's § 2255 motion, denies Petitioner a certificate of appealability, and denies Petitioner's motions to amend and for an extension of time.

## I.  BACKGROUND

      Because Petitioner's motion to vacate presents two relatively discreet issues, only a brief

recitation of the facts is necessary here.   The Court of Appeals, in its opinion in *United States v. Judge*, 447 F. App'x 409 (2011), *cert. denied*, 132 S. Ct. 2376 (2012), a companion case to Petitioner's own direct appeal, *see United States v. Lewis*, 447 F. App'x 310, 313 (2011), *cert. denied*, 132 S. Ct. 1731 (2012), provided the following summary of the background facts underlying Petitioner's conviction:

> Raymond Morales, who served as one of the government's key cooperating witnesses in this case, was the leader of a large-scale drug-trafficking organization based in Camden, New Jersey. Between 1993 and 2004, Morales's organization sold hundreds of kilograms of cocaine and cocaine base.   Morales distributed both through "drug sets," areas known for drug sales he operated in Camden, and through sub-organizations headed by individuals with whom Morales was friendly.   One such sub-organization was led by [Petitioner,] Jevon Lewis.   During the early 1990s through 1995, and from early 2001 through September 2002, [Petitioner] bought cocaine in bulk from Morales.[1]   [Petitioner] sold at his own "drug sets" in Camden, including one at 8th and Central Streets.   Ahmed judge worked for [Petitioner] for a period of time in 2001 and 2002, functioning primarily as an armed body-man or "enforcer" at [Petitioner's] sets.   Mack Jones headed a second subgroup that sourced from Morales. . . . Troy Clark ran a third group that sourced through Morales, the "MOB Boys."
>
> On September 8, 2001, an individual was shot and killed at Morales's drug set at Atlantic and Norris Streets.   Morales believed violence at his markets was bad for business, and wanted to retaliate. Morales mistakenly believed the perpetrator was Kenneth Fussell, and offered [Petitioner] $10,000 to have Fussell killed.   [Petitioner] accepted and contracted with Ahmed Judge and Jamar Bacon to carry out the murder.   At 11:30 p.m. on October 4, 2001, Judge and Bacon shot and killed Fussell on the front steps of Fussell's apartment in Camden.
>
> Camden police officer Sergeant Strang was two blocks away from the shooting when it occurred and went to the scene immediately.   An eyewitness told Strang he saw, from his second

---

[1] "From 1995 through early 2001, and from September 2002 onwards, [Petitioner] was imprisoned." *Judge*, 447 F. App'x at 411 n. 3.

2

story bathroom, an African-American male wearing a sweatshirt and a baseball cap flee to a nearby field.   Strang searched the field and within minutes, found Judge hiding behind hay bales, squatting on a sweatshirt and a baseball cap.   Strang asked Judge to show his hands and when Judge did not respond, Strang directed another officer to handcuff him.   Judge told Strang he had been shot. When Strang asked by whom, Judge did not respond.   Strang asked if the clothes Judge was sitting upon belonged to him, and Judge answered affirmatively.

. . . .

A grand jury returned a four-count indictment against Ahmed Judge, [Petitioner], and Mack Jones.   Count one charged defendants with conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base, under 21 U.S.C. § 846 (conspiracy) and § 841(b)(1)(A) (drug trafficking);[2] Count Two charged Judge and [Petitioner] with murder in furtherance of a continuing criminal enterprise or a drug-trafficking conspiracy, under 21 U.S.C. § 848(e)(1)(A); Count three charged Judge and [Petitioner] with murder in the course of a firearms offense, under 18 U.S.C. § 924(c) and Count Four charged Judge with possession of a firearm by a convicted felon, under 18 U.S.C. § 922(g).   After a two-month trial, the jury found the defendants guilty on all counts.

*Judge*, 447 F. App'x at 411-12.

During the jury charge, this Court provided the jurors with the following instructions regarding the amounts and types of controlled substances involved in Count One, the conspiracy charge:

It is alleged in the indictment that particular amounts or quantities of cocaine and cocaine base are involved in the conspiracy charged in Count [One].   To prove a particular defendant's guilt with respect to Count [One], the evidence in the case need not establish the type, amount or quantity of either drug as alleged in the indictment.   That is, the Government need not prove that the defendant knew the type of drugs or exact quantity of drugs

---

[2] The indictment also charged Dennis Rodriguez, Francisco Morales, Ruben Lozada, and Mark Davis, all of whom pled guilty, as parts of the same conspiracy.   *Judge*, 447 F. App'x at 412 n. 4.

> involved.  It is enough that the Government prove beyond a
> reasonable doubt that the defendant you are considering knew that
> his conduct with respect to the conspiracy charged in Count 1 of the
> indictment, involved some type and some amount of controlled
> substance.
>
> If you find that the defendant you are considering is guilty
> of the offense charged in Count [One], you will be asked additional
> questions later about the type and quantity of controlled substance
> involved in the offense.

(Trial Transcript, Document 2 attached to ECF No. 7 at 1-2).  Based on this charge, the verdict

sheet provided the jury with the following special questions, which the jury unanimously answered

in the affirmative in their verdict:

> 2(A).  With respect to whether the United States proved beyond a
> reasonable doubt that the conspiracy involved more than 50 grams
> of cocaine base (crack), we, the unanimous jury find . . .
>
> . . . .
>
> 3(A).  With respect to whether the United States proved beyond a
> reasonable doubt that the conspiracy involved at least 5 kilograms
> of cocaine (powder), we, the unanimous jury find . . .

(Crim. Action No. 06-76, ECF No. 281 at 2).  As a result of the guilty verdict and the Jury's

affirmative findings as to these two special jury questions, and after a weighing of the appropriate

sentencing factors, this Court sentenced Petitioner to "concurrent terms of life imprisonment on

Counts One and Two, and a consecutive 120 months on Count Three."  *Judge*, 447 F. App'x at

412.

Petitioner appealed his conviction, arguing insufficient evidence, that a buy-sell charge

should have been given, that the Court should have excluded certain portions of the trial testimony

either as testimonial hearsay or for various other grounds, and that the life plus one hundred and

twenty month sentence was unreasonable.  *See Lewis*, 447 F. App'x at 313-19.  The Court of

4

Appeals affirmed, finding that the conviction was supported by ample evidence of both the drug

conspiracy and of the murder of Fussell, that the admission of the contested evidence was either

proper or harmless in light of the considerable evidence of guilt produced at trial, and that this

Court's sentence was reasonable in light of the sentencing factors.   *Id.*   The Court of Appeals had

the following to say in regards to Petitioner's sentence:

> We find the court's sentence reasonable in light of the § 3553
> factors.  Regarding the first factor, the "nature and circumstances
> of the offense," 18 U.S.C. § 3553(a)(1), [Petitioner's] crimes were
> grave.  His drug-trafficking conspiracy was of major proportions
> (the District Judge termed it the largest drug case he ever presided
> over), and [Petitioner's] murder was deliberate and premeditated.
> Although [Petitioner] claims it was unfair for him to receive the
> same sentence as the person who pulled the trigger, the court found
> [Petitioner] and Judge equally culpable with respect to Fussell's
> death.  Regarding "the characteristics of the defendant," *id.* §
> 3553(a)(1), the court explained at sentencing it found "little hope"
> [Petitioner] would assume a "conventional way of living."  He had
> taken two lives (in addition to Fussell, [Petitioner] had been
> convicted for aggravated manslaughter), he worked steadily as a
> drug dealer throughout his adult life, and he showed no respect for
> the conventions of society.  We find no substantive error in the
> court's assessment of the Section 3553 factors.  Its sentence of life
> imprisonment plus 120 months was reasonable.

*Id.* at 319.

Petitioner thereafter filed the instant § 2255 motion on or about February 25, 2013.   (EF

No. 1).  On June 14, 2013, this Court issued an order pursuant to *United States v. Miller*, 197 F.3d

644 (3d Cir. 1999), which advised Petitioner that he was required to present all grounds for relief

in a single § 2255 motion and could therefore either file a single, all-inclusive motion subject to

the AEDPA one year statute of limitations[3] within forty-five days of this Court's order or have his

---

[3] That one year period had expired prior to the Court's receiving Petitioner's motion on March
11, 2013, but not before he apparently mailed his motion in late February, as Petitioner's petition

motion ruled upon as filed.  (ECF No. 2).  That Order also informed Petitioner that if he failed to respond to the *Miller* notice, his Petitioner would be ruled upon as filed.  (ECF No. 2 at 3). Petitioner did not respond to the *Miller* notice.  On January 27, 2014, this Court ordered the Government to file an answer to the motion, which it did on April 11, 2014.  (ECF No. 5, 7). Petitioner thereafter filed his response on May 16, 2014.  (ECF No. 10).  It was only after Petitioner's § 2255 motion had already been fully briefed that Petitioner filed a motion to amend his § 2255 motion, which was then unaccompanied by a proposed amended motion.  (ECF No. 11).  Petitioner filed that motion on August 6, 2014.  (ECF No. 11).  The Government filed a response in opposition on August 12, 2014.  (ECF No. 12).  On September 2, 2014, Petitioner filed a motion for an extension of time in which to file his amended motion.  (ECF No. 13). Petitioner thereafter filed his proposed amended motion on September 9, 2014.  (ECF No. 14).


## II.  DISCUSSION

### A.  Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.   Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

for certiorari had been denied, and the one year started to run, on March 5, 2012.  *See* 28 U.S.C. §2255(f)(1); *Lewis v. United States*, 132 S. Ct. 1731 (2012); *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).

28 U.S.C. § 2255.  Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

## B.  Analysis

### 1.  An evidentiary hearing is not required

Under § 2255, a motion to vacate requires an evidentiary hearing "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).  Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by a petitioner or indicate that petitioner is not entitled to relief as a matter of law, no hearing is required.  *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546 (evidentiary hearing is necessary only where the petitioner's claims are not conclusively resolved by the record). For the reasons set out below, Petitioner's claims are without merit, and therefore the record establishes that Petitioner is not entitled to relief as a matter of law.  As such, no evidentiary hearing is required on Petitioner's § 2255 motion.

### 2. Petitioner's Actual Innocence Claim

Petitioner claims that his conviction for the murder of Kenneth Fussell must be vacated as he is actually innocent of that crime.   Petitioner does not couch his actual innocence claim in any constitutional violation, but instead raises actual innocence as a stand-alone claim.   Indeed, Petitioner specifically states that his conviction did not result from any ineffective assistance of counsel.   (*See* ECF No. 10 at 7-8).   Actual innocence claims classically have been used as a gateway claim through which a court may reach the merits of an otherwise procedurally defaulted or barred constitutional claim.   *See, e.g., McQuiggan v. Perkins*, --- U.S. ---, ---, 133 S. Ct. 1924, 1934-46 (2013).   In order to make out a gateway claim for actual innocence, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of" newly raised evidence viewed alongside all of the remaining evidence produced at trial.   *Id.* at 1935; *Albrecht v. Horn*, 485 F.3d 103, 126 (3d Cir. 2007).   It is insufficient for a petitioner to merely claim actual innocence, he must show such innocence through "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."   *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).   Actual innocence claims therefore are rarely successful, and should only be granted in the exceptional case where "evidence of innocence [is] so strong that a court cannot have confidence in the outcome of the trial" as "no reasonable juror" could have convicted the petitioner.   *McQuiggin*, 133 S. Ct. at 1936.   Indeed, because even a gateway claim requires a "strong showing of actual innocence," such claims have "in virtually every case . . . been summarily rejected."   *Hubbard*, 378 F.3d at 341 (quoting *Calderon v.*

8

*Thompson*, 523 U.S. 538, 558-59 (1998)).

While the use of actual innocence as a gateway claim is well established in the case law, the validity of a stand-alone actual innocence claim as a vehicle for habeas relief remains questionable. The Court first dealt with such a claim in the capital habeas case of *Herrera v. Collins*, 506 U.S. 390 (1993). In that case, the Court noted that claims of actual innocence had only previously been permitted as gateway claims. *Id.* at 400. "This rule," the Court observed, "is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.* The Court in that case rejected the petitioner's stand-alone innocence claim, as the Court had "never held that [habeas relief] extends to freestanding claims of actual innocence." *Id.* at 404. The *Herrera* Court, however, assumed *arguendo* that "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional" and in such a case a stand-alone innocence claim *may* be available. *Id.* at 417. Even were such a freestanding claim available, however, the "threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*

Although the Court has returned to the question of whether a stand-alone claim of actual innocence would be sufficient to warrant habeas relief, the Court has never squarely decided the issue, at times assuming in dicta that a "truly persuasive" actual innocence claim may be sufficient, but never explicitly so holding. *See District Attorney's Office for the Third Judicial District v. Osborne*, --- U.S. ---, ---, 129 S. Ct. 2308, 2321 (2009); *House v. Bell*, 547 U.S. 518, 554-55 (2006). The Court has noted, however, that if such a claim were available, the level of proof required to make out a freestanding claim would be greater than that required to use actual innocence as a

gateway claim. *House*, 547 U.S. at 555.   Based on the Court's holding in *Herrera*, and on the

Court's refusal to thereafter establish freestanding actual innocence claims as viable habeas

vehicles, the Third Circuit has repeatedly held that, at least in non-capital cases, "[i]t has long been

recognized that '[c]laims of actual innocence based on newly discovered evidence' are never

grounds for 'federal habeas relief absent an independent constitutional violation.'" *Fielder v.*

*Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (quoting *Herrera*, 506 U.S. at 400); *see also Albrecht*,

485 F.3d at 121-22, 124 (rejecting a freestanding actual innocence claim and suggesting that if a

stand-alone innocence claim were cognizable, significantly greater proof would be required than

that necessary to establish a gateway innocence claim).   It thus remains unclear at best whether a

stand-alone actual innocence claim is cognizable by way of a § 2255 motion, especially in non-

capital cases, but it is clear that if such a claim is available the proof required would be significantly

greater than that required for a gateway claim.

Petitioner presents, as his alleged newly discovered evidence in support of his freestanding

innocence claim, only his assertions, without any supporting affidavits or other documentation, as

to what he, his co-defendant Ahmed Judge, and Wayne Jennings would have testified had they

been called as witnesses at trial.   A petitioner's own proffered testimony, however, does not

qualify as "new evidence" sufficient to establish even a gateway claim of innocence.   *See*

*Hubbard*, 378 F.3d at 341.   The Third Circuit has likewise stated that the testimony of other

witnesses who were available to testify at trial, but were not called as witnesses based on the

decisions of trial counsel, are likewise not "new evidence," and thus would not support a finding

of actual innocence.   *See Goldblum v. Klem*, 510 F.3d 204 226, 226 n. 14 (3d Cir. 2007) (evidence

"is not 'new' if it was available at trial, but a petitioner . . . chose not to present it to the jury.");

10

*Knecht v. Shannon*, 132 F. App'x 407, 409 (3d Cir. 2005) (both a defendant's own late-proffered testimony and the testimony of his sister who was available to testify at trial are not "new" evidence sufficient to support a gateway innocence claim).

As Petitioner's own proffered testimony is insufficient to establish his actual innocence, Petitioner's claim must fail if Judge and Jennings were witnesses available to him at trial who he chose not to call. Petitioner does not state or otherwise suggest that Jennings was unavailable to him, instead merely suggesting that Jennings was not called because Petitioner, who put on his case in chief after the Government had concluded its own case, "was under the assumption that the Government was calling Wayne Jennings." (ECF No. 10 at 8). As Petitioner also specifically denies that he received ineffective assistance of counsel, the record is devoid of any information which would suggest that Jennings was unavailable as a witness,[4] and therefore his purported testimony would not constitute "new evidence."

As to Ahmed Judge, Petitioner argues that Judge's purported testimony was unavailable to him as Judge, as a co-defendant, could not be compelled to testify. Judge, as one of Petitioner's codefendants, was known to Petitioner at the time of trial. That Judge could not compel his testimony does raise the question of Judge's availability had Petitioner desired to call him, but that question is undercut by the fact that Petitioner did not argue in his pre-trial motion to sever that

---

[4] Petitioner does assert that he was "unsuccessful in locating the witness until 2012," this statement appears to reflect Petitioner's difficulty in finding Jennings which arose only after trial. (ECF No. 10 at 8). Plaintiff's own statements clearly indicate that Jennings and what Petitioner suggests Jennings would have said had he testified was known to him at the time of trial and Petitioner provides no factual support for the assertion that Jennings could not have been so called.

the testimony of Judge was necessary to Petitioner's case.[5]   Had Petitioner so argued, that motion to sever might have been granted and Judge's testimony would then have been available to Petitioner.   This Court need not deal with such questions of what could have happened as even were this Court to assume, *arguendo*, that Judge's purported testimony was not available at trial and would therefore be "new" evidence, that alone would be insufficient to make out even a gateway claim of actual innocence.

Evidence provided in support of such a claim must not only be "new" but also "reliable." *Hubbard*, 378 F.3d at 339-40.   Thus, the testimony of purported witnesses must be "trustworthy" before a court should consider it in relation to an actual innocence claim.   *Id.*   Problematically for Petitioner, however, courts "generally consider exculpatory testimony offered by codefendants after they have been sentenced to be inherently suspect." *United States v. Jasin*, 380 F.3d 355, 365 (3d Cir. 2002) (dealing with a similar issue in the Rule 33 context).   What's more, Petitioner has not provided any affidavits or sworn statements in support of his motion.   Indeed, Petitioner has provided nothing as to the testimony of Jennings and Judge but his own bald assertions of what testimony those witnesses would provide given the chance.   This Court does not find Petitioner's bald assertions trustworthy in the least, and thus those assertions are insufficient to warrant consideration of Petitioner's actual innocence claim.   *Hubbard*, 378 F.3d at 339-40.

Even if this Court were to consider this proffered "new evidence," however, Petitioner's actual innocence claim would still fail.   As the Third Circuit found in ruling on Plaintiff's insufficient evidence claim on direct appeal, the Government presented "ample evidence" of

---

[5] In his omnibus pre-trial motion, Petitioner did argue that "it is possible that defendant shall seek to call one or more co-defendants as witness on his behalf," but did not elaborate nor commit to any such course of action.   (*See* Criminal Action No. 06-76, ECF No. 97 at 41.).

Petitioner's involvement in the drug conspiracy and murder for which he was convicted, and certainly "more than sufficient" evidence to establish Petitioner's guilt. *Lewis*, 447 F. App'x at 313-14. In regards to the murder charges for which Petitioner asserts his innocence, the Third Circuit noted that "Morales testified to paying [Petitioner] $10,000 in cancelled drug debts to have Kenneth Fussell killed, and he told the jury that after the murder, [Petitioner] reported 'his boy' had carried it out. Circumstantial evidence showed [Petitioner] arranged for [Judge's] bail but took steps to hid his assistance. Nasser Perez testified that [Petitioner] knew intimate details of Fussell's killings." *Id.* at 314. In light of the considerable evidence presented at trial of Petitioner's guilt, the unreliable, base assertions Petitioner provides as to what he, Judge, and Jennings would have said had they testified, unsupported by sworn statements, are patently insufficient to establish that it is more probable than not that no reasonable jury could have found Petitioner guilty of his involvement in the Fussell murder.[6] As Petitioner fails to establish even a gateway claim of actual innocence, his stand-alone claim would certainly fail assuming such a claim is viable in a § 2255 motion. *Albrecht*, 485 F.3d at 121-22, 124.

## 3. Petitioner's *Apprendi* Claim[7]

---

[6] The considerable evidence presented at trial of Petitioner's guilt is further supported by petitioner's apparent admission to his involvement in the murder during a post-trial proffer session with the Government. (*See* ECF No. 7 at 13 n. 10). While this Court need not resort to consideration of that purported admission to resolve Petitioner's claim, that admission would certainly undercut Petitioner's claim.

[7] As Petitioner's argument deals with the statutory maximum, and not minimum, sentence, *Apprendi*, rather than *Alleyne v. United States*, --- U.S.---, 133 S. Ct. 2151 (2013), applies. Because Petitioner was convicted *after* the *Apprendi* decision, that the decision was not retroactive is immaterial. Petitioner's argument is therefore properly styled as an *Apprendi* claim.

Petitioner's remaining argument is that his life sentence for the drug conspiracy is invalid as it exceeds the statutory maximum in the absence of a specific jury finding as to the amount of controlled substance Petitioner himself distributed or possessed with intent to distribute, as opposed to the amount involved in the conspiracy as a whole, presumably under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).   The Government argues that, as this Court has rejected Petitioner's argument as to actual innocence, this Court should refuse to hear Petitioner's *Apprendi* argument pursuant to the concurrent sentence doctrine.

"Under the concurrent sentence doctrine, a court has 'discretion to avoid resolution of legal issues affecting less than all counts in an indictment if at least one will survive and sentences on all counts are concurrent.'" *Parkin v. United States*, 565 F. App'x 149, 152 (3d Cir. 2014) (quoting *United States v. McKie*, 112 F.3d 626, 628 n. 4 (3d Cir. 1997)); *see also United States v. Am. Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1100 (3d Cir. 1989).   The concurrent sentence doctrine, however, is inapplicable where the allegedly wrongful conviction at issue "carries continued collateral consequences."   *Id.* (citing *Spencer v. Kemna*, 523 U.S. 1, 8-12 (1998); *Kendrick v. Dist. Attorney of Cnty. of Philadelphia*, 488 F.3d 217, 220 (3d Cir. 2007).   Here, however, Petitioner's argument as to the conspiracy is not that the conviction itself was wrongful, only that the term of imprisonment is excessive as it exceeds the statutory maximum.   As Petitioner does not seek to vacate the conspiracy conviction, nor eliminate its collateral consequences, the reasoning of *Kendrick* would not be implicated and application of the concurrent sentence doctrine would be appropriate here.   Because Petitioner's life sentence would remain unchanged in the event that this Court agreed with his *Apprendi* argument, "review[ of] the concurrently sentenced counts [would be] of no utility."   *Id.* (quoting *Jones v. Zimmerman*, 805

14

F.2d 1125, 1128 (3d Cir. 1986).   As such, this Court has the discretion to refuse to hear Petitioner's *Apprendi* claim.

That said, this Court will briefly address the merits of Petitioner's sentencing argument. Under *Apprendi*, any factor which increases the maximum sentence for a given offense is an element of that offense and must therefore found by a jury beyond a reasonable doubt.   530 U.S. at 490.   Under the relevant statute, a sentence for cocaine distribution "may not be less than 10 years or more than life" where the violation involves five kilograms or more of a substance containing a detectable amount of cocaine.   21 U.S.C. § 841(b)(1)(A)(ii).   Pursuant to Third Circuit case law, however, in cases involving conspiracies to distribute controlled substances, the Government need not prove the amount of controlled substances attributable to any given member of the conspiracy, but instead is required only to prove the amount in the conspiracy as a whole. *See United States v. Whitted*, 436 F. App'x 102, 104-05 (3d Cir. 2011).   "[I]n drug conspiracy cases, *Apprendi* requires the jury to find only the drug type and quantity element as to the conspiracy as a whole, and not the drug type and quantity attributable to each co-conspirator.   The finding of drug quantity for purposes of determining the statutory maximum [sentence] is, in other words, to be an offense specific, not a defendant-specific, determination."   *Id.* (quoting *United States v. Philips*, 349 F.3d 138, 142-43 (3d Cir. 2003), *vacated and remanded on other grounds sub nom.*, *Barbour v. United States*, 543 U.S. 1102 (2005).

The jury in this case specifically found the type and quantity of drugs involved in the conspiracy charged in Count One by way of their answers on the special verdict form, establishing that the conspiracy involved more than five kilograms of cocaine.   (Criminal Action No. 06-76, ECF No. 281 at 2).   As such, the statutory sentencing range applicable to <u>all</u> members of that

conspiracy convicted under Count One was therefore ten years to life.   21 U.S.C. §

841(b)(1)(A)(ii); 21 U.S.C. § 846; *Whitted*, 436 F. App'x 104-05; *Phillips*, 349 F.3d at 142-43.

Petitioner's life sentence was therefore authorized by the statute and the jury's verdict, and

Petitioner's *Apprendi* argument is without merit.


**4.   Petitioner's Motion to Amend**

Finally, this Court is called upon to dispose of Petitioner's motion to amend his § 2255

motion.   Initially, the Court notes that Petitioner's motion to amend arose well after the one year

statute of limitations had run on March 5, 2013.   *See* 28 U.S.C. §2255(f)(1); *Lewis*, 132 S. Ct. at

1731; *Kapral*, 166 F.3d at 577.   Thus, the claims presented therein would likely be time barred.

This Court, however, need not reach the question of the time bar nor whether Petitioner can show

cause and actual prejudice to excuse his default.   Where a petitioner files a motion to amend after

being provided a *Miller* notice and a chance to file an all-inclusive motion, and after that all-

inclusive motion has been fully briefed, that motion to amend represents a second or successive

petition filed without leave.   *See, e.g., Foote v. United States*, No. 12-3094, 2014 WL 1214812,

at *7 (D.N.J. Mar. 24, 2014).   "Section 2255, as amended by AEDPA, bars second or successive

habeas petitions absent exceptional circumstances and certification by the appropriate court of

appeals." *United States v. Chew*, 284 F.3d 468, 470 (3d Cir. 2002) (quoting *Miller*, 197 F.3d at

649).   Petitioner was provided with a *Miller* notice in June of 2013, to which he chose not to

respond.   (ECF No. 2).   This matter was fully briefed and more than a year passed before

Petitioner chose to file a motion to amend.   (ECF No. 11).   Under the circumstances, Petitioner's

motion to amend presents a second successive § 2255 motion without leave and therefore his

motion to amend must be denied.   *Foote*, 2014 WL 1214812, at *7; *Chew*, 284 F.3d at 470.   This Court will therefore deny Petitioner's motion to amend and will not consider the claim raised in Petitioner's purported amended motion.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), Petitioner may not appeal from the final order in a proceeding under § 2255 unless Petitioner has "made a substantial showing of the denial of a constitutional right."   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   As Petitioner's claims are clearly without merit, he has failed to make a substantial showing that he was denied a constitutional right, and jurists of reason could not conclude that his claims are adequate to deserve encouragement to proceed.   As such, no certificate of appealability shall issue.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion to vacate is DENIED, no certificate of appealability shall issue, and Petitioner's motion to amend and motion for an extension of time to amend are DENIED.   An appropriate order follows.

_____
Hon. Joseph E. Irenas, S.U.S.D.J.

6/9/15

17